PETER S. DICKINSON (SBN 139495)
pdickinson@bushgottlieb.com
KIRK M. PRESTEGARD (SBN 291942)
kprestegard@bushgottlieb.com
ESTEPHANIE VILLALPANDO (SBN 323087)
evillalpando@bushgottlieb.com
BUSH GOTTLIEB
A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Plaintiffs Directors of the
Motion Picture Industry Pension Plan and
Directors of the Motion Picture Industry
Health Plan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan,<br><br>Plaintiffs,<br><br>vs.<br><br>24 HTL (U.S.), LLC, a Delaware Limited Liability Company, and Fundamental Films, Inc., a California Corporation, and DOES 1 through 10,<br><br>Defendants. | **CASE NO. 2:20-CV-00653**<br><br>**COMPLAINT TO COMPEL AUDIT ENTRY, FOR UNPAID CONTRIBUTIONS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AND BREACH OF COLLECTIVE BARGAINING AGREEMENTS**<br><br>**(29 U.S.C. § 185; 29 U.S.C. §§ 1132 and 1145)** |

Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan ("Directors") allege as follows:

## JURISDICTION AND VENUE

1. This action by the Directors of the Motion Picture Industry Pension Plan and Motion Picture Industry Health Plan (collectively, and as distinguished from the Directors, the "Plans") is based on the failure and refusal of Defendant 24

1  HTL (U.S.), LLC ("24 HTL") and DOES 1 through 10, inclusive, to honor their
2  obligations to the Plans, as required by the terms of certain collective bargaining
3  agreements and the trust agreements governing the Plans, and pursuant to § 515 of
4  the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29
5  U.S.C. § 1145, and § 301(a) of the Labor Management Relations Act ("LMRA"), 29
6  U.S.C. § 185(a).

2.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331; ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1); and LMRA § 301(c), 29 U.S.C. § 185(c).

3.  Venue is based on the location of the office in which the Plans are administered, located in the Central District of California. As such, venue is appropriate pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and LMRA § 301(a), 29 U.S.C. § 185(a).

## PARTIES

4.  The Plans are "employee benefit plans" within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), in that they were created pursuant to written declarations of trust ("Trust Agreements") between the International Alliance of Theatrical Stage Employees ("IATSE") and certain other labor organizations, and motion picture and television industry producer employers participating in the Plans ("Producers"), and are maintained for the purpose of providing their participants and beneficiaries with medical, surgical and hospital benefits in the event of sickness, accident, disability or death, and retirement benefits. The Plans were created and now exist pursuant to LMRA § 302(c), 29 U.S.C. § 186(c).

5.  The Plans are "multiemployer plans" within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), in that more than one employer is required to contribute to the Plans and the Plans are maintained pursuant to collective bargaining agreements between the Unions (as defined in par. 6, *infra*) and multiple motion picture and television producers.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

6. The Directors are "fiduciaries" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), half of whom have been appointed by the Producers and half of whom have been appointed by the IATSE; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 399; and other applicable labor organizations (collectively, "Unions"). The Directors have an obligation to protect the Plans' assets including ensuring that signatory employers properly remit to the Plans contractually-required pension and health contributions.

7. Under the Trust Agreements, the Directors have control and authority over the Plans, including the authority to file actions such as the present case to protect the Plans' trust assets.

8. At all times relevant herein, the Unions have been labor organizations representing employees in the motion picture and television industry, which is an industry affecting commerce within the meaning of LMRA § 501(1), 29 U.S.C. § 142(1).

9. At all times relevant herein, 24 HTL is and has been a limited liability company organized and existing under the laws of the State of Delaware, transacting business in the State of California, with its principal place of business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, 24 HTL is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

10. At all times relevant herein, Fundamental Films, Inc. ("Fundamental Films") is and has been a company organized and existing under the laws of the State of California and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, Fundamental Films is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

11. The Directors are currently unaware of the true names and capacities of defendants sued herein by fictitious names, DOES 1 through 10, inclusive, and

therefore sue those defendants by fictitious names. The Directors shall seek leave to amend this Complaint to allege the true names and capacities of such fictitiously-named defendants when they are ascertained.

## COMMON ALLEGATIONS

12. The Plans are established and maintained through certain collective bargaining agreements between the Producers and the Unions and the Trust Agreements enacted by the Producers and the Unions (collectively, "Basic Agreement"). The Producers are represented by the Alliance of Motion Picture and Television Producers, a trade association responsible for negotiating virtually all the industry-wide entertainment union collective bargaining agreements, commonly referred to as the "AMPTP."

13. At all times relevant herein, 24 HTL has been signatory to the Basic Agreement, as well as separately executed Consent Agreements and Trust Acceptance agreements, which, inter alia, obligate 24 HTL to pay contributions to the Plans in the manner and under the terms set forth therein. Collectively, the Basic Agreement, Consent Agreements, and Trust Acceptance agreements are referred to herein as the "Signatory Documents."

14. Under ERISA § 515, 29 U.S.C. § 1145, employers such as 24 HTL that are obligated to make contributions to a multiemployer plan pursuant to one or more collectively bargained agreements are required to make such contributions in accordance with the terms and conditions of such plan or agreements.

15. Further, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes the Directors to enforce the requirements set forth in ERISA § 515 against 24 HTL.

16. At all material times, 24 HTL employed motion picture technicians to perform covered services on its motion picture, "24 Hours to Live" ("Motion Picture") which is covered by the Basic Agreement.

17. Pursuant to the Signatory Documents, 24 HTL is under an obligation to make certain monetary contributions to the Plans based upon, with limited

exceptions, a set dollar amount for every hour worked or guaranteed ("Payroll Contributions") to individuals who provided covered services on the Motion Picture covered by the Basic Agreement ("Covered Individuals").

18. Pursuant to the Signatory Documents, the Directors have authority to conduct an audit of the books and records of signatory employers for the purpose of determining the accuracy of Payroll Contributions made to the Plans. The Trust Agreements provide that if such an audit discloses a delinquency or underpayment of such Payroll Contributions, the cost of the audit shall be borne by the signatory that is found to be delinquent, and if litigation is required to compel such an audit, the costs of such litigation are to be borne by the signatory.

19. Based on the express terms of the Signatory Documents, the Directors reposed trust and confidence in 24 HTL and relied on 24 HTL to accurately report and pay the correct amount of Payroll Contributions to the Plans. 24 HTL's refusal to allow the Audit to be performed and its breach of the trust and confidence the Directors reposed in it, inter alia, serves to toll any statute of limitations, if applicable.

## ALTER EGO ALLEGATION

20. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 19 as though fully set forth herein.

21. The Directors are informed and believe, and on that basis allege, that 24 HTL was formed by members, officers, and/or shareholders of Fundamental Films for the purpose of producing the Motion Picture and that the members, officers, and/or shareholders of Fundamental Films and 24 HTL substantially overlap.

22. The Directors are informed and believe, and on that basis allege, that 24 HTL is the alter ego of Fundamental Films based upon the following factors: (i) Fundamental Films has failed to respect the separate identity of 24 HTL by failing to observe strict corporate formalities; (ii) Fundamental Films demonstrated

fraudulent intent with respect to 24 HTL, either at the time of its formation, by, among other things, failing to adequately capitalize 24 HTL, or, subsequent to its formation, by abusing its corporate form; (iii) the purposes of ERISA will be frustrated if the fiction of the separateness between 24 HTL and Fundamental Films is recognized and perpetuated; and (iv) recognition of 24 HTL and Fundamental Films as separate entities would result in substantial injustice to the Plans because, without employer contributions, the Plans will be inadequately funded and will be unable to meet their obligations to the Plans' participants and beneficiaries.

23. Fundamental Films, through its agents, control, own, and operate 24 HTL as evidenced by Fundamental Films' role as the production company for the Motion Picture, the use of their shared address and telephone number, and the use of a "Fundamental Films" email address to conduct official business on behalf of 24 HTL.

24. The Directors are informed and believe, and on that basis allege that at all material times Fundamental Films and 24 HTL, as alter ego entities, have been and continue to be jointly and severally liable for any and all obligations arising from the Signatory Documents in connection with production of the Motion Picture.

## **FIRST CAUSE OF ACTION**
### **(Failure to Comply With Audit Obligations)**

25. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 24 as though fully set forth herein.

26. The Directors maintain an audit program for the purpose of monitoring and enforcing compliance with the Signatory Documents, including the obligation to timely and accurately pay contributions to the Plans.

27. At all times material herein, pursuant to the terms of the Signatory Documents, 24 HTL has been under an affirmative duty to cooperate with the audit process and to provide the Plans with information, such as books and records pertaining to the Motion Picture during the period of time under audit, so that they

can determine whether Payroll Contributions, and other contribution obligations, have been paid properly and in the correct amounts.

28. On or about June 22, 2017, the Plans announced a payroll compliance review of 24 HTL ("Audit") for the period from August 21, 2016 through June 17, 2017 (the "Audit Period").

29. The Plans sent numerous written demands to 24 HTL requesting access to the books and records the auditors must have in order to commence and ultimately complete the Audit.

30. For several months, 24 HTL has failed to respond to numerous requests for records made by the independent auditors engaged by the Plans to perform the Audit.

31. To date, 24 HTL has failed and/or refused to provide the Plans or their agents with the books and records they are entitled to review under the Signatory Documents. Without these records, the Directors are unable to determine the total amount of Payroll Contributions owed to the Plans with respect to the Motion Picture or whether 24 HTL has complied with its obligations to make appropriate Payroll Contributions to the Plans under the terms and conditions of the Plan Signatory Documents.

32. By its execution of the Signatory Documents, 24 HTL agreed that in the event of a failure to make necessary records available for an audit, it would be liable for expenses associated with enforcement, including but not limited to reasonable audit fees, and attorneys' fees, in addition to unpaid contributions, liquidated damages, interest, and legal costs, whether or not the audit ultimately identified any delinquent or unpaid contributions.

33. The Directors are informed and believe, and on that basis allege, that liquidated damages, interest, legal fees and audit costs are due, in addition to any unpaid or underpaid Payroll Contributions, in amounts to be established by proof at trial.

## SECOND CAUSE OF ACTION

**(Violation of ERISA § 515, 29 U.S.C. § 1145 – Unpaid Payroll Contributions)**

34. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 33 as though fully set forth herein.

35. Pursuant to the Plan Signatory Documents, 24 HTL is responsible for complying with all terms and conditions of the Basic Agreement and Trust Agreements, including but not limited to the payment of Payroll Contributions based on the hours worked by covered employees performing covered services in connection with production of the Motion Picture.

36. The Directors are informed and believe, and thereon allege, 24 HTL has not paid or has underpaid Payroll Contributions due and owing in connection with the Motion Picture.

37. Pursuant to ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), and the Plan Signatory Documents, in the event of a delinquent payment, 24 HTL agreed to be and is liable to the Directors for liquidated damages equal to the greater of either 20% of the total amount of Payroll Contributions then due, or interest on the amount then due at the annual rate of 12% calculated from the date when payment was due to the date when payment is made. The Directors are informed and believe that 24 HTL owes liquidated damages in an amount to be established by proof at trial.

38. Pursuant to ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), and the Plan Signatory Documents, in the event of a delinquent payment, 24 HTL agreed to be and is liable to the Directors for interest at the annual rate of 12% on all unpaid Payroll Contributions due in connection with the Motion Picture calculated from the date when payment was due to the date when payment is made. The Directors are informed and believe that 24 HTL owes interest in an amount to be established by proof at the trial.

39. Pursuant to ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), and the Plan Signatory Documents, 24 HTL agreed to be and is liable to the Directors for

attorneys' fees and legal costs incurred in connection with collection of unpaid and/or underpaid Payroll Contributions. The amount of such attorneys' fees and legal costs will be established by proof at trial.

40. Pursuant to the Signatory Documents, 24 HTL agreed to be and is liable to the Plans for the costs of auditing 24 HTL in connection with delinquent and/or unpaid Payroll Contributions, and owes audit costs in amounts to be established by proof at trial.

41. At all times material herein, pursuant to the terms of the Basic Agreement and Trust Agreements, 24 HTL was under an affirmative duty to pay the Plans the correct amount of Payroll Contributions and to provide the Plans and their agents with information so that they may determine whether Payroll Contributions have been properly paid. The Directors are informed and believe, and on that basis allege, 24 HTL failed to accurately report this information and to pay the proper Payroll Contributions as to the Motion Picture.

## THIRD CAUSE OF ACTION

### (Violation of LMRA § 301(a), 29 U.S.C. § 185 – Breach of Collective Bargaining Agreements)

42. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 41 as though fully set forth herein.

43. 24 HTL breached the Basic Agreement by failing to allow an audit of its books and records to be completed, as required under the terms and conditions set forth therein.

44. 24 HTL breached the Basic Agreement by failing to pay or by making insufficient payments of Payroll Contributions with respect to the Motion Picture, as required under the terms and conditions set forth therein.

45. As a result of 24 HTL's breach of the Basic Agreement, the Directors have suffered damages in an amount to be established by proof at trial, including but not limited to unpaid and/or underpaid Payroll Contributions, liquidated damages,

interest, attorneys' fees, legal costs, and audit costs.

## FOURTH CAUSE OF ACTION

### (Against Fundamental Films and 24 HTL as Alter Egos)

46. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 45 as though fully set forth herein.

47. The Directors are informed and believe and on that basis allege that there is an interrelationship of operations, management, and ownership between 24 HTL and Fundamental Films, including substantially overlapping executives and a shared business address.

48. The Directors are informed and believe and on that basis allege that at all material times the common members, managers, and owners of 24 HTL and Fundamental Films commingled their assets and property, including their respective interests and rights in the Motion Picture and related intellectual property.

49. Fundamental Films, as the alter ego of 24 HTL, is bound to the Signatory Documents to the same extent as 24 HTL; as such both Fundamental Films and 24 HTL are obligated to make necessary records available for audit, and to report and pay to the Plans any and all unpaid contributions found to be due and owing, as well as interest, liquidated damages, audit costs, legal and attorneys' fees, as set forth in the Signatory Documents, as applicable.

## PRAYER FOR RELIEF

WHEREFORE, the Directors pray for judgment against Defendants 24 HTL, Fundamental Films, and Does 1-10, jointly and severally, as follows:

1. For an order directing 24 HTL and Fundamental Films to provide the Plans and their agents with all books and records necessary to complete the Audit;

2. for unpaid Payroll Contributions in an amount to be established by proof at trial;

3. for audit costs in an amount to be established by proof at trial;

4. for liquidated damages in an amount to be established by proof at trial;

5. for interest in an amount to be established by proof at trial;

6. for reasonable attorney's fees and other costs of this action incurred by the Directors, in amounts to be established by proof at trial; and

7. for such additional relief as this Court deems just and proper.

DATED: January 22, 2020

PETER S. DICKINSON
KIRK M. PRESTEGARD
ESTEPHANIE VILLALPANDO
BUSH GOTTLIEB, A Law Corporation

By: ______________________
ESTEPHANIE VILLALPANDO
Attorneys for Motion Picture Industry Pension and Health Plans

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
